UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE:<br><br>EX PARTE APPLICATION OF ALONSO ANCIRA ELIZONDO FOR AN ORDER TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Misc. Action No. _____ |

### DECLARATION OF GUSTAVO ADOLFO MADERO UCERO

Pursuant to 28 U.S.C. § 1746, I, Gustavo Adolfo Madero Ucero, declare under penalty of perjury as follows:

1. I am the president of Madero Legal Group, P.C., based in Los Angeles, California, and a partner of Grupo Legal Madero, S.C., based in Mexico City, México (together, "Madero Legal Group"). These are two independent law firms that work together in cross-border matters, typically involving the United States and México. I am admitted to practice law in México (since 2006); California and New York (since 2010); and the U.S. Supreme Court (since 2016). Before establishing Madero Legal Group, I was an in-house counsel for Altos Hornos de México, S.A.B. de C.V. and its subsidiaries (together, "AHMSA").

2. I currently represent Mr. Ancira, the president of AHMSA, in connection with *amparo* proceedings in México related to criminal money laundering charges pending against him in México ("Mexican Criminal Proceeding"). Mr. Ancira is a party in the Mexican Criminal Proceeding. Mr. Ancira is also subject to an extradition proceeding pending against him in Spain ("Spanish Extradition Proceeding").

3. I submit this declaration in support of the *ex parte* application ("Application") submitted by Mr. Ancira for an order under 28 U.S.C. § 1782 ("Section 1782") permitting him to seek discovery from UBS AG ("UBS") in the District of Connecticut.

1

4.  I understand that Mr. Ancira seeks documents and information from UBS relating to, among other things, U.S. dollar transactions (including deposits and payments) executed by an account held in the name of Tochos Holding Ltd. ("Tochos Holding") that is booked with UBS in Switzerland ("Requested Discovery"). Upon information and belief, I understand that UBS clears its own U.S. dollar transactions through its branch in Stamford, Connecticut. Mr. Ancira seeks the Requested Discovery to support his efforts to fight the Mexican Criminal Proceeding. I further understand that Mr. Ancira intends to use the Requested Discovery to aid in his defense in the Spanish Extradition Proceeding as well.

5.  As Mr. Ancira's counsel in the Mexican Criminal Proceeding, I am familiar with the information set forth in this declaration either from personal knowledge or on the basis of information and documentation I have reviewed.

6.  Because I submit this declaration specifically in support of the Application, it does not contain each and every fact within my knowledge regarding the topics discussed herein.

**I.   MEXICAN CRIMINAL PROCEDURES**

7.  In 2008, México implemented constitutional reforms that established a new criminal system that is based on an adversarial process. This is one where, *inter alia*, the state must present the basis for charges against a defendant and the defendant has the opportunity to present a defense. This is generally referred to as México's "New Criminal System." Its implementation was gradual, starting on June 18, 2008 until June 18, 2016, when it became fully effective throughout all of México. The procedures in the New Criminal System do not apply to cases that were existing before the date it became effective in the state where the case is based and to certain types of cases, as some states have applied the New Criminal System to lower-level offenses only. For any such cases, the process is governed by México's traditional criminal justice system that is based upon, *inter alia*, a combination of inquisitory and accusatory roles. In this

system, both the prosecutors and the defense have the opportunity to present their case before a judge. However, certain procedures are different from the New Criminal System. For example, witness declarations signed prior to trial are given priority in terms of the weight of evidence over testimony elicited from prosecutors during the trial. This is on the basis that the declarations were executed closer in time to the events at issue in the trial.

8. The Mexican Criminal Proceeding is based on the New Criminal System. The New Criminal System has three general stages, excluding appeals or proceedings concerning writs of *amparo* (described further below): (1) the investigation stage; (2) the intermediate stage; and (3) trial.

9. The first stage is the investigation stage, which commences with the filing of the criminal complaint. The filing of a complaint, in turn, initiates an investigation by law enforcement authorities, such as the Ministerio Público de la Federación ("MPF") (the Mexican government agency responsible for investigating and prosecuting federal crimes) and the Policía Federal Ministerial ("PFM") (the federal police agency that investigates crimes). If the criminal complaint relates to a state crime, then state prosecutors and police will lead the investigation. With certain exceptions, the party that has standing to file a criminal complaint is the victim of the crime.

10. The investigation stage has two phases: (i) the initial investigation; and (ii) the formal investigation. The initial investigation is typically conducted by prosecutors (such as the MPF) with the assistance of the police (such as the PFM). Under Mexican law, investigators are required to maintain a formal file containing all information and documents relating to a particular investigation, such as evidence that prosecutors have collected and records of investigation steps that they have undertaken (such as calls with witnesses or the police). This is called the *carpeta de investigación*, or investigation file.

11.     When the prosecutors and police have completed their initial investigation, they convene an initial hearing in the *juzgado de control*, or control court, where the defendant must be present. During this hearing, or *audiencia inicial*, the prosecutors describe the evidence in their possession and their preliminary legal theory of the case to the court and the defendant. If the court determines there is sufficient evidence for prosecutors to bring a case to trial, it orders a *vinculación a proceso* – which initiates the second phase of the investigation stage: the formal investigation. This is conducted by the same prosecutors who did the initial investigation but may encompass additional evidence-gathering to prepare for trial. In addition, unlike the initial investigation, the court oversees the formal investigation. For example, it sets a deadline by which the prosecutors must complete the investigation.

12.     The second stage is the intermediate stage (called the *etapa intermedia*). This commences with the filing of an *acusation*, or accusation, by prosecutors. This document sets forth the criminal charges against the defendant. Thereafter, the prosecutors and defendant engage in pre-trial motions and discovery.

13.     The third and final stage is trial. In México, criminal trials are overseen by one or three judges ("trial judges"). None of the trial judges can be the judge that handled the pre-trial stages ("control judge"), such as issuing an arrest warrant (if any), initial hearing, formal investigation phase and pre-trial motions and discovery. Trial judges make the final determination on whether a defendant is guilty and sentence him or her. In México, there are no jury trials.

14.     A defendant in a criminal investigation can present evidence in his defense during any of the three phases of the New Criminal System. During the first two pre-trial phases, any such evidence shared with prosecutors becomes part of the formal investigative file and formal record in the proceeding.

## II. OVERVIEW OF MEXICAN CRIMINAL PROCEEDING

### A. The Criminal Complaint and Arrest Warrant

15. On May 23, 2019, the Secretaría de Hacienda y Crédito Público, or Ministry of Treasury, filed a criminal complaint against Mr. Ancira for allegedly performing transactions with funds from illegal sources as defined under article 400 bis of the Mexican Federal Criminal Code, commonly known as money laundering ("Criminal Complaint"). Under Mexican law, the Ministry of Treasury is the "victim" of federal money laundering offenses and is therefore the only party that has legal standing to file money laundering-related criminal complaints.

16. On May 25, 2019, prosecutors from the Fiscalía General de la República ("FGR") (the Office of the Mexican Attorney General) and the MPF (together, "Federal Prosecutors") sought and obtained an arrest warrant against Mr. Ancira ("Arrest Warrant") from a *juez de distrito especializado en el sistema penal acusatorio, adscrito al Centro de Justicia Penal Federal* (or "district judge specialized in the accusatory criminal system [the New Criminal System], assigned to the Federal Criminal Justice System") in Mexico City. The prosecutors based the Arrest Warrant on the contents of a *carpeta de investigación* (investigative file) numbered FED/SEIDF/UNAI-CDMX/0000289/2019.

17. The control judge at the Federal Criminal Justice Center and who is assigned to Mr. Ancira's case ("Control Judge") granted the Arrest Warrant and initiated a *causa penal* (or "judicial file") numbered 211/2019. In issuing the Arrest Warrant, the Control Judge summoned Mr. Ancira to appear before the court for an initial hearing on the money laundering charges in the Criminal Complaint.

18. The Control Judge issued the Arrest Warrant on an *ex parte* basis without first summoning Mr. Ancira to appear at an initial hearing before the court. The Arrest Warrant does not provide any explanation as to why it needed to be issued, such as a concern by the MPF that

Mr. Ancira may be a flight risk thereby making it necessary to maintain confidentiality regarding the Criminal Complaint.

19.     On June 21, 2019, México issued a request for Mr. Ancira's extradition from Spain pursuant to the Tratado de Extradicion y Asistencia Mutua en Materia Penal entre los Estados Unidos Mexicanos y el Reino de España ("Extradition Request"). México did not attach copies of the prosecutors' investigative file (*carpeta de investigacion*), the judicial file (*causa penal*) or any evidence used by México to support the Arrest Warrant to the Extradition Request.

20.     The Arrest Warrant and Extradition Request remain open, and Mr. Ancira is a party to an open criminal investigation in México. In particular, the Mexican Criminal Proceeding is currently in the first phase of the investigation phase (i.e., the initial investigation). This is because the *audiencia inicial*, or initial hearing, has not yet taken place. A criminal proceeding in the New Criminal System remains in the investigation phase until the end of the initial hearing, at which point the control judge decides whether there is sufficient evidence to order the *vinculación a proceso*, thus allowing the case to proceed.

**B.     *Amparo* Proceedings in México**

21.     Mr. Ancira's legal representatives have filed two writs of *amparo* in México defending Mr. Ancira against the Arrest Warrant. I am Mr. Ancira's attorney in connection with one of these two writs.

22.     An *amparo* is a legal remedy that individuals and entities (such as companies) can use in order to challenge actions of the state (such as an arrest warrant, seizure of a party's assets) that may violate fundamental human rights, due process and constitutional rights. In México, a petitioner filing an *amparo* typically does so in courts dedicated to hear such writs or, in locations where such a court does not exist (such as in smaller cities), in the federal court. In bigger cities,

such as in Mexico City, there are courts that specifically consider writs of *amparo* in criminal cases.

23. On June 12, 2019 and on behalf of Mr. Ancira, I filed a writ of *amparo* with the court dedicated to criminal *amparo* cases in Mexico City in which Mr. Ancira challenged the Control Court's issuance of the Arrest Warrant ("Mexico City Amparo"). In November 2019, this court denied the *amparo* and, in December 2019, another of Mr. Ancira's legal representatives filed an appeal (called a *recurso de revisión*) with the *Tribunales Colegiados de Circuito*, or federal Collegiate Circuit Court (appellate court), in Mexico City. The decision on the appeal remains pending as of the date of this Application.

24. In February 2020, another legal representative for Mr. Ancira filed a writ of *amparo* with a federal court in Chiapas in which he argued, among other things, that the Secretaría de Hacienda y Crédito Público, or Ministry of Treasury, had failed to file the Criminal Complaint within three years of the commission of the alleged crime as required under article 107 of the Mexican Federal Criminal Code ("Chiapas Amparo"). In addition, the FGR is a party to the Chiapas Amparo because, by law, the FGR is a party to every *amparo* proceeding and because the FGR sought and obtained the Arrest Warrant.

25. On August 13, 2020, the court in Chiapas ruled in favor of Mr. Ancira, finding that the Ministry of Treasury had not filed the Criminal Complaint within the three-year statute of limitations period ("Chiapas Amparo Decision"). Given that the Arrest Warrant is based on the Criminal Complaint, the Chiapas court further concluded that the Arrest Warrant needed to be cancelled and informed the Control Judge in Mexico City. Mr. Ancira's representatives asked the Chiapas court for further clarification regarding the request, in response to which, on August 14,

2020, the Chiapas court issued a written order directing the immediate cancellation of the Arrest Warrant because the case involved Mr. Ancira's personal liberty ("Cancellation Order").

26. The FGR appealed the Chiapas Amparo Decision. In addition, the FGR requested that the Chiapas court stay enforcement of the Cancellation Order and the Chiapas Amparo generally. The FGR argued that enforcing the Cancellation Order could create irreparable harm for the FGR. On August 20, 2020, the Chiapas court granted the stay.

27. On August 20, 2020, the Federal Judicial Council, or Consejo de la Judicatura Federal ("CJF"), suspended the secretary of the Chiapas court who issued the opinion in the Chiapas Amparo for six months. The secretary had issued it in his capacity as acting judge while the normal judge was on holiday. The CJF, which is responsible for disciplinary actions against judges, made this decision on the rationale that the acting Chiapas judge issued an order finding that the statute of limitations had lapsed even though the court in Mexico City had denied the Mexico City Amparo, which challenged the validity of the Arrest Warrant.

28. To date, the Arrest Warrant remains valid. The Control Judge has not cancelled the Arrest Warrant because of the pending decision by the Collegiate Circuit Court in the appeal regarding denial of the Mexico City Amparo as well as the Chiapas court's stay against enforcing the Cancellation Order.

### III. THE REQUESTED DISCOVERY AND MEXICAN PROCEDURES PERTAINING TO DISCOVERY

#### A. Summary of Relief Sought

29. Mr. Ancira believes that the Requested Discovery will, among other things, support his arguments that the money laundering allegations in the Criminal Complaint – and, in turn, the Arrest Warrant – are baseless, including because the Requested Discovery will show that AHMSA's transfers underlying the allegations were executed under the terms of consulting

agreements. The Requested Discovery accordingly pertains to an issue known to and considered by the Federal Prosecutors and Control Judge in the Mexican Criminal Proceeding.

30. The Requested Discovery is relevant and useful to the investigative process of the Federal Prosecutors and to the deliberation process of the Control Judge in connection with the Mexican Criminal Proceeding.

31. The Requested Discovery complies with the procedural rules of good faith and is not prohibited by the Mexican courts.

32. UBS is not a party to Mexican Criminal Proceeding and also is not subject to the jurisdiction of the Control Judge.

### B. Federal Prosecutors' and Control Judges' Reception of Evidence Gathered from Foreign Jurisdictions

33. This Application does not "attempt to circumvent" proof-gathering restrictions of the Federal Prosecutors or Mexican courts nor hinder or restrict Mexican courts' ultimate authority to rule on issues pertaining to the admissibility of evidence.

34. Courts in México have held in numerous cases that they must allow parties (such as prosecutors and defendants in criminal cases) to engage in "maximum activity" as it relates to evidence gathering and sharing in court proceedings. Courts have reasoned that they prefer an "excess in the admission of evidence" as opposed to a "restriction" of such evidence, given that (1) the fundamental right to evidence is part of due process; and (2) the public has a fundamental right to the truth. There is binding authority, issued by México's Collegiate Circuit Courts, stating:

> [B]ecause **in the interpretation of the evidentiary rules, it is also appropriate to allow the maximum evidentiary activity of the parties, preferring, even, the excess in the admission of evidence, to that of a restrictive interpretation**, since in the former underlies the idea of closing the gap, and even to match the historical truth with the truth to be declared in the sentence, on the basis that **truth is a human right** whose restriction must necessarily be justified and, therefore, **the evidentiary provisions must be interpreted in accordance with** article 14 of the Political

9

Constitution of the United Mexican States, concerning **the human right to due process**.[1] (emphasis added) (English translation).

35.     In addition, the fundamental right to due process is protected by various Mexican legal principles – including those of legality, legal security and certainty, and adequate defense, as well as the right to the truth. These principles are set forth in México's Constitution, the National Code of Criminal Procedure, the Inter-American Convention on Human Rights and the International Covenant on Civil and Political Rights (together, "Applicable Law"), and must be guaranteed to all defendants.

36.     Articles 14 and 16 of México's Constitution provide for the guarantees of legality and legal security and certainty. In addition, the fundamental right to due process is guaranteed by the "right to truth," which is expressly provided for under Mexican law as a purpose of the New Criminal System and set forth in Article 20, § A.I of the Constitution. Article 20, § B.IV of the Constitution provides for the guarantee of an adequate defense for the defendant, which extends to the receipt of relevant evidence offered by her or him.

37.     Article 113 of the National Code of Criminal Procedure stands for the general proposition that the defendant has the broad inalienable right to an adequate defense and to offer evidence and acts of investigation during any stage of the criminal proceeding. Article 129 of the National Code of Criminal Procedure expressly states that both the defendant and his or her counsel may request that the MPF undertake "all investigative acts" ("*todos aquellos actos de*

---

[1]     *Carga de la prueba y derecho a probar. Sus diferencias*, TCC, Décima Época, Semanario Judicial de la Federación y su Gaceta, Libro 40, Tomo IV, Marzo de 2017, Tesis XI.1o.A.T. J/12, Página 2368 ("[P]orque en la interpretación de las normas probatorias también es procedente la que permita la máxima actividad probatoria de las partes, prefiriendo, inclusive, el exceso en la admisión de pruebas, a la de una interpretación restrictiva, por cuanto en aquélla subyace la idea de aproximar, y hasta de hacer coincidir la verdad histórica con la verdad que habrá de declararse en la sentencia, partiendo de la base de que la verdad es un derecho humano cuya restricción necesariamente debe justificarse y, por ende, la norma probatoria ha de interpretarse conforme al artículo 14 de la Constitución Política de los Estados Unidos Mexicanos, en lo concerniente al derecho humano al debido proceso.").

*investigacion*") that the defendant and his or her counsel consider relevant and useful to clarify the "facts." Article 212 further sets forth how criminal investigations must be conducted:

> Duty of criminal investigation . . . The investigation must be carried out immediately, efficiently, exhaustively, professionally and impartially, free of stereotypes and discrimination, and must be aimed at **exploring all possible lines of investigation that will make it possible to gather data for the clarification of the fact** that the law indicates as an offence, as well as the identification of who committed it or participated in its commission.[2] (emphasis added) (English translation).

38. Key international conventions on human rights and of which México is a signatory likewise guarantee fundamental rights to due process. Article 8, § 2(c), (e)-(f) of the American Convention on Human Rights (ratified by México in 1981), and Article 14, § 3 of the United Nations International Covenant on Civil and Political Rights (ratified by México also in 1981), expressly set forth a defendant's fundamental right to a fair trial, including a minimum guarantee to have the "adequate time and means for the preparation of his defense" as well as the right to "examine witnesses" or "other persons who may throw light on the facts."

39. The Inter-American Court of Human Rights ("IACHM") has established binding authority that the right to a defense must be guaranteed from the moment an investigation is initiated against the accused as the probable author or participant in a crime, reasoning that to do the opposite would only "enhance the investigative powers of the State to the detriment of the

---

[2] The original Spanish text of Article 212 of the National Code of Criminal Procedures is as follows: "*Deber de investigación penal . . . La investigación deberá realizarse de manera inmediata, eficiente, exhaustiva, profesional e imparcial, libre de estereotipos y discriminación, orientada a explorar todas las líneas de investigación posibles que permitan allegarse de datos para el esclarecimiento del hecho que la ley señala como delito, así como la identificación de quien lo cometió o participó en su comisión.*" (Emphasis added.)

fundamental rights of the person under investigation."[3] This authority is binding because, among other reasons, (1) México has accepted the jurisdiction of IACHM; and (2) IAHCM decisions constitute *res judicata* in México when México is a party to the case (as it was here).[4]

40.     In summary, the Applicable Law does not prohibit the use of evidence gathered abroad. To the contrary, México favors a liberal approach to evidence gathering.

41.     In addition, prosecutors examine, and courts are receptive to the submission of, any evidence that is relevant to a party's defense, regardless of whether it was obtained pursuant to prosecutors' own investigations or an order of the court and regardless of whether it was obtained from outside México. Prosecutors or courts will generally not interfere with the admission of evidence that assists a party in his or her defense as long as it was lawfully obtained in the relevant jurisdiction (such as, in this instance, the United States).

---

[3]     *Cfr.* Case of Cabrera García and Montiel Flores v. México, Judgment of November 26, 2010 (Preliminary Objection, Merits, Reparations and Costs), paragraph 154: "The Court has previously held that the right to defense must necessarily be exercised from the moment a person is accused of perpetrating or participating in an unlawful action and only ends when the proceeding concludes, including, where applicable, the enforcement phase. To prevent a person from exercising his right to defense from the moment the investigation against him begins and the authority in charge orders or executes actions that imply an curtailment of rights is to enhance the investigative powers of the State to the detriment of the fundamental rights of the person under investigation. The right to defense requires the State to treat the individual, at all times, as a true party to the proceeding, in the broadest sense of this concept, and not simply as an object thereof."

[4]     The Mexican Supreme Court has recognized that IACHM decisions are binding on all branches of the Mexican government in such instances.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Los Angeles, California, on September 2, 2020.

_____
Gustavo Adolfo Madero Ucero