UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE:

EX PARTE APPLICATION OF ALONSO
ANCIRA ELIZONDO FOR AN ORDER
TO OBTAIN DISCOVERY FOR USE IN
FOREIGN PROCEEDINGS PURSUANT
TO 28 U.S.C. § 1782

Misc. Action No. _____

DECLARATION OF JAVIER SÁNCHEZ-VERA
GÓMEZ-TRELLES AND MANUEL OLLÉ SESÉ

Pursuant to 28 U.S.C. § 1746, we, Javier Sánchez-Vera Gómez-Trelles and Manuel Ollé Sesé, declare under penalty of perjury as follows:

1.  We are attorneys with Oliva-Ayala Abogados, S.L.P. and Ollé & Sesé Abogados, respectively, which are based in Madrid. We are both admitted to practice law in Spain.

2.  We represent Alonso Ancira Elizondo in connection with an extradition proceeding pending against him in Spain ("Spanish Extradition Proceeding"), the underlying basis for which are criminal money laundering charges pending against him México ("Mexican Criminal Proceeding"). Mr. Ancira is a party in the Spanish Extradition Proceeding.

3.  We submit this declaration in support of the *ex parte* application ("Application") submitted by Mr. Ancira for an order under 28 U.S.C. § 1782 ("Section 1782") permitting him to seek discovery from UBS AG ("UBS") in the District of Connecticut.

4.  We understand that Mr. Ancira seeks documents and information from UBS relating to, among other things, U.S. dollar transactions (including deposits and payments) executed by an account held in the name of Tochos Holding Ltd. ("Tochos Holding") that is booked with UBS in Switzerland ("Requested Discovery"). Upon information and belief, we understand that UBS clears its own U.S. dollar transactions through its branch in Stamford,

Connecticut. Mr. Ancira seeks the Requested Discovery to support his efforts to fight the Spanish Extradition Proceeding. We further understand that Mr. Ancira intends to use the Requested Discovery to aid his defense in the Mexican Criminal Proceeding as well.

5. As Mr. Ancira's counsel in the Spanish Extradition Proceeding, we are familiar with the information set forth in this declaration either from personal knowledge or on the basis of information and documentation we have reviewed.

6. Because we submit this declaration specifically in support of the Application, it does not contain each and every fact within our knowledge regarding the topics discussed herein.

## I. THE SPANISH EXTRADITION PROCEEDING AND POTENTIAL WRIT OF AMPARO

7. On June 21, 2019, México submitted a request to Spain seeking Mr. Ancira's extradition ("Extradition Request"). The Extradition Request is based upon a warrant that México issued for Mr. Ancira's arrest on May 25, 2019 ("Arrest Warrant"), in which it alleges that Mr. Ancira engaged in money laundering. The Extradition Request includes the facts underlying the criminal offenses with which Mr. Ancira is being charged in México and, in support thereof, was accompanied by a sworn statement of a Mexican prosecutor.

8. The Spanish Extradition Proceeding is governed by Spain's Passive Extradition Law and the Extradition and Mutual Assistance in Criminal Matters Treaty Between the Kingdom of Spain and the United States of México, dated November 21, 1978 ("Treaty"), and, in the context of the judicial aspects of the Treaty, is overseen by the Criminal Chamber of Spain's Audiencia Nacional ("National Court").

9. The Spanish Extradition Proceeding consists of two phases. The first is a preliminary administrative phase (called the "gubernatorial phase") during which an extradition request is sent by the requesting country (here, México) to the Spanish Ministry of Foreign Affairs

which, in turn, sends it for review to the Spanish Council of Ministers. If the Council of Ministers decides to consider the request, the second phase – consisting of a judicial proceeding – begins. Here, the Extradition Request bears *Nota Verbal* number 1884/2019, is dated June 21, 2019 and was sent from the Embassy of the United States of México in Spain.

10. In this second phase, a judicial proceeding is initiated before a trial court. In the case of Mr. Ancira, this proceeding (captioned "20/2019") was initiated in the Juzgado Central de Instrucción n.º 1, or Central Court of Instruction No. 1 ("Court of Instruction"). This court oversees the preliminary stages of the proceeding, including holding a hearing upon a party's arrest pursuant to an extradition request. During this hearing, the court will inquire if the party consents to extradition or contests it.

11. On July 30, 2019, Mr. Ancira contested extradition in his hearing before the Court of Instruction. Accordingly, and as required under Spanish criminal procedures, oversight over the proceeding was transferred from the Court of Instruction to the Sección Primera de Sala de lo Penal de la Audiencia Nacional, or First Section of the Criminal Chamber of the National Court ("First Court") on September 16, 2019. The case in the First Court is captioned "Rollo de Sala de Extradition 27/2019."

12. On May 27, 2020, the First Court issued a decision, called an *"auto,"* in which it agreed to the Extradition Request.

13. On July 15, 2020, Mr. Ancira appealed (*"recurrió"*) the *auto* issued by the First Court. In particular, Mr. Ancira filed an appeal (*"súplica"*) of the First Court's *auto* with the Pleno de la Sala de lo Penal de la Audiencia Nacional, or the Plenary of the Criminal Chamber of the National Court ("Plenary Court"). The *súplica* is currently pending. As of the date of the Application, a decision is expected in September or October 2020, at the earliest.

14. The Plenary Court will issue a decision (an *auto*) following a deliberation and vote by a panel of appellate judges. The Plenary Court will issue the *auto* without a hearing where Mr. Ancira and his counsel can verbally present arguments contesting the Extradition Request. However, in exceptional circumstances, the Plenary Court can consider new facts that were previously unavailable in the First Court.

15. In the event that the Plenary Court affirms the granting of the Extradition Request, Mr. Ancira can appeal the decision to the Tribunal Constitucional ("<u>Constitutional Tribunal</u>"), which is the highest court in Spain, on matters of fundamental rights. He also plans to file a writ of *amparo* challenging the decision to extradite him to México with the Constitutional Tribunal. Through an *amparo*, a party (the petitioner) can challenge violations of fundamental rights, including human and due process rights, perpetrated, in Mr. Ancira's case, by the First Court and the Plenary Court.

16. If Mr. Ancira challenges his extradition based on a violation of his fundamental rights by the First Court and Plenary Court, he may first need to submit another remedy called an "*incidente de nulidad*" with the Plenary Court before filing the *amparo* with the Constitutional Tribunal. Mr. Ancira would need to file an *incidente de nulidad* if the Plenary Court's decision resolving the *súplica* raises new issues that constitute another violation of Mr. Ancira's fundamental rights.

17. In the *amparo*, Mr. Ancira would seek to annul the two *autos* granting the Extradition Request – the decision to grant it by the First Court and the affirmance by the Plenary Court – and thus revoke any order directing Mr. Ancira's extradition. While the law that would govern the appeal of an *amparo* in the Constitutional Tribunal (called the "Organic Law of the Constitutional Court") does not contain an express provision stating that a party may submit new

evidence as part of the *amparo*, it does not explicitly prohibit the submission of new evidence. Accordingly, Mr. Ancira could seek to submit new evidence as part of any *amparo* for the Constitutional Tribunal's consideration.

18. If the Constitutional Tribunal rejects Mr. Ancira's *amparo*, that decision may be appealed to the European Court of Human Rights in Strasbourg, France.

## II. THE REQUESTED DISCOVERY AND SPANISH NATIONAL COURT RULES PERTAINING TO DISCOVERY

### A. Summary of Relief Sought

19. Among other things, Mr. Ancira believes that the Requested Discovery will support his arguments that the money laundering allegations against him in México are baseless, including because the Requested Discovery will show that the transfers underlying the allegations were executed under the terms of consulting agreements. The Requested Discovery will therefore help us prove the "diverted purpose" of the Extradition Request – namely, that México is acting in bad faith against Mr. Ancira. The Requested Discovery accordingly pertains to an issue previously raised before the First Court.

20. The Requested Discovery is relevant and useful to the deliberation process of the Plenary Court.

21. The Requested Discovery complies with the procedural rules of good faith and is not prohibited by the Spanish courts.

22. UBS is not a party to Spanish Extradition Proceeding and therefore not subject to the Spanish court's jurisdiction.

### B. Spanish Court Rules on Discovery, Disclosure of Evidence and Receptivity to Evidence Gathered from Foreign Jurisdictions

23. The Application does not "attempt to circumvent" proof-gathering restrictions of the Spanish courts nor hinder or restrict the Spanish court's ultimate authority to rule on issues pertaining to the admissibility of evidence.

24. Article 24 of the Spanish Constitution guarantees the right to effective judicial protection, fair process and the right to present a defense in a criminal matter, which includes the right to present evidence.[1]

25. Article 231 of the Law of Criminal Procedure allows the parties to present "*los documentos que tuvieran por conveniente en justificación de sus pretensiones*" (in English, "the documents deemed convenient in justification of their claims") before the issuance of the decision on Mr. Ancira's judicial recourse ("*recurso de apelación*"). In particular, in Mr. Ancira's case, the evidence would need to be submitted before the start of the session for deliberation and voting on the *súplica*. It is our opinion that Article 231, which is specific to all *recursos de apelación*, is applicable to the *súplica*.

26. No Spanish law prohibits the submission of new evidence during the *súplica* phase before the Plenary Court judges have voted on the *súplica*. The Plenary Court will allow the introduction of new evidence not previously available if certain pre-requisites are met: (1) the evidence is useful and decisively relevant to the matter; (2) the evidence complies with the

---

[1] The text of Article 24 is as follows: "*1. Todas las personas tienen el derecho a obtener la tutela efectiva de los jueces y tribunales en el ejercicio de sus derechos e intereses legítimos, sin que, en ningún caso, pueda producirse indefensión. 2. Asimismo, todos tienen derecho . . . a la defensa y . . . a utilizar los medios de prueba pertinentes para su defensa . . . .*"

The English translation is: "1. All persons have the right to obtain effective protection from judges and courts in the exercise of their rights and legitimate interests, without, under any circumstances, being defenseless. 2. Furthermore, everyone has the right . . . to a defense and . . . to use the means of evidence in his or her defense . . . ."

6

procedural rules of good faith; and (3) the evidence is not prohibited by the National Court. In addition, the new evidence must relate to an issue previously raised in the First Court.

27. In terms of timing, the Plenary Court will accept and consider new evidence presented before the start of the session for deliberation and voting on the appeal.

28. Spanish courts provide for the submission of evidence, irrespective of whether it was obtained from within the jurisdiction of the tribunal, and do not prohibit the use of evidence gathered abroad. Spanish courts will not generally interfere with the admission of evidence that assists a party in its defense as long as it is lawfully obtained in the relevant jurisdiction (such as, in this instance, the United States).

We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed in Madrid, Spain, on this the 31 day of August 2020.

Javier Sánchez-Vera Gómez-Trelles

Manuel Ollé Sesé

8